United States Court of Appeals,

Fifth Circuit.

No. 96-30980.

Jose GONZALEZ, Plaintiff-Appellant,

v.

TRINITY MARINE GROUP, INC., Defendant-Appellee.

July 28, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, DeMOSS, Circuit Judge and DOHERTY,[1] District Judge.

DOHERTY, District Judge:

Appellant, Jose Gonzalez ("Gonzalez"), appeals the district court's judgment dismissing Gonzalez's suit at his cost and the granting of reasonable attorney's fees and expenses in connection with the district court's grant of Trinity Marine Group, Inc.'s ("Trinity") Motion to Strike Plaintiff's Pleadings for Dismissal and Sanctions. Plaintiff also appeals the district court's use of an evidentiary hearing in conjunction with Trinity's Motion to Strike Pleadings for Dismissal and Sanctions and the denial by the district court of Plaintiff's Motion for Partial Summary Judgment on the issue of whether Plaintiff, as a matter of law, was an "employee" within the meaning of La.Rev.Stat. § 23:1006 and La.Rev.Stat. § 51:2231, the Louisiana race, sex, and age discrimination in employment statutes. For the following reasons,

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

1

we AFFIRM IN PART, REVERSE IN PART and REMAND IN PART.

### Background

In August of 1994, Jose Gonzalez filed suit against Trinity Marine Group, Inc. asserting several claims which included a claim pursuant to the Louisiana employment discrimination statutes, La.Rev.Stat. § 23:1006 and § 51:2231 *et seq.,* claims pursuant to La. Civ.Code art. 2315 for intentional and negligent infliction of emotional distress, and a claim for breach of contract and detrimental reliance also pursuant to Louisiana law.[2]

Gonzalez was hired on April 13, 1992, and employed as a draftsman for over two years at Trinity's Gretna, Louisiana shipyard. Trinity alleges Gonzalez was a "job shopper" or independent contractor; Gonzalez alleges he was an employee. Gonzalez's position was eliminated when the amount of drafting work done at Trinity declined, and required a reduction in work force and contract labor. Gonzalez was the last remaining job shopper when his position was eliminated. Prior to his dismissal from Trinity, in a letter dated August 17 1994, Gonzalez complained to Trinity of discrimination based on his national origin, wherein he stated his classification as an independent contractor was due to his being of Hispanic national origin. The following week, on

---

[2]However, the district court subsequently dismissed Gonzalez's claims for intentional and negligent infliction of emotional distress. Ruling on Motions, January 19, 1995. It is not necessary for the purposes of this motion to reiterate the entire procedural history of this matter, other than to state plaintiff's claims are pursuant to La.Rev.Stat. § 51:2231 and La.Rev.Stat. § 23:1006. Plaintiff has not asserted a claim pursuant to 42 U.S.C. § 2000e, Title VII.

August 26, 1994, Trinity officials met with Gonzalez to discuss his claim of discrimination. Unbeknownst to the Trinity officials, Gonzalez secretly recorded the meeting. Gonzalez was terminated from Trinity the following week and subsequently filed his complaint on August 30, 1994 against Trinity alleging race discrimination and retaliatory discharge.

Within discovery, Gonzalez did not disclose that a recording of the meeting existed. A hearing was held on October 11, 1995, on a Motion to Compel Certain Discovery, which would have included the tape at issue, wherein the district court ordered Gonzalez to produce a privilege log. Trinity's receipt of that log on October 24, 1995 granted Trinity its first notice of the existence of a taped recording of the August 26, 1994 meeting.

Upon request to produce the tape, Gonzalez refused and Trinity filed a second motion to compel. After the motion was filed by Trinity, Gonzalez agreed to produce the tape and on November 7, 1995, Gonzalez's attorney, Gregory T. Juge, produced what is now called the "original tape." The sound quality of the copied tape was poor and Trinity engaged a local expert, Keith Falgout, to amplify the sound quality. During this process concern arose that the "original tape" had been altered.

Trinity subsequently hired an expert, Dr. George Papcun, of Los Alamos National Laboratories, to perform certain tests on the tape. To do so, he needed the actual "original" recording and the tape recorder which Gonzalez had used to record the meeting with Trinity officials. Trinity's attempts to obtain the actual

3

"original" recording and the tape recorder from plaintiff's counsel were unsuccessful.

Trinity was forced to file a third motion to compel for the production of the actual "original" recording and tape recorder. The district court granted defendant's third motion to compel on December 21, 1995, ordering Gonzalez to produce the actual "original" tape and the recorder. Thereafter, Gonzales produced the actual "original" tape recording and the tape recorder used in recording the conversation between Gonzalez and the Trinity officers on August 26, 1994. The "original" recording was digitally recorded by Trinity's experts onto another tape and onto a computer for later analysis. Both the "original" tape and the digital copies were tested and analyzed by Trinity's experts. Plaintiff's counsel was in attendance at all times during the copying and testing of the "original" tape, and upon completion of the testing, said tape was returned to his possession. Exact duplicate copies of all tapes created and/or analyzed by defendant's experts were provided to the Plaintiff.

After receiving a report from Dr. Papcun, Trinity filed a Motion to Strike Pleadings, for Dismissal and Sanctions. In conjunction with said motion, Trinity requested an evidentiary hearing which the district court held on August 8, 1996.

After testimony was presented during the evidentiary hearing, which included Plaintiff's testimony, defendant's experts, and Trinity employees who had been present at the August 26, 1994 meeting, the district court ruled:

4

The Court having heard that which was presented on the motion of Defendant to strike Plaintiff's pleadings for dismissal and for sanctions will grant the motion for sanctions and will discuss what they should be. I will reserve ruling on the motion to strike pleadings and will reserve ruling on the motion for dismissal.

It would be appreciated if Counsel could suggest to the Court either orally now or in a brief what sanctions should be, bearing in mind, and this is not a ruling on the motion for dismissal, that I consider a dismissal rather extreme, especially when there are other aspects of the case. But I don't rule out dismissal, and striking pleadings in effect is the same thing as dismissal, so whatever you care to address is fine.

Sanctions, which should they be? I could pronounce to the jury at the time of the trial of this case that it is an established fact that Mr. Gonzalez knew at the time he had this conversation that work was slowing down. I could tell the jury that when I had a hearing on a pre-trial motion, I considered that Mr. Gonzalez's testimony was untruthful and I could tell the jury that Mr. Gonzalez made a tape recording of a conversation unknown to other participants in the conversation and that while in his possession the tape recording was altered in the manner in which it was altered.

These are merely suggestions, but I do think the preponderance of the evidence I've heard, the expert testimony, every—the tape was altered. The only material place that I think we're talking about is the "I don't know," instead of, "yes, I know the work was slowing down."

And it would be my intention to make sure the jury knows that my appreciation of the fact was that Mr. Gonzalez was untruthful and that the tape while in his possession was altered in that respect....

With all this in mind, I don't see that it's necessary for me at this time to report this to the Criminal Division of the United States Attorney's Office, but it might be that it should be done. I'm stating now that evidence in the case was altered. I'm stating that I think perhaps Mr. Gonzalez committed perjury. Maybe you should address whether I should address this to the Criminal Division of the United States Attorney's Office.

I throw the ball in your court, gentlemen and consider the matter submitted.

Transcript of Evidentiary Hearing, August 8, 1996, at 131-33.

Counsel for Gonzalez and Trinity both submitted post-trial memoranda as requested by the court.

The district court thereafter on August 29, 1996, issued ruling on defendant's Motion to Strike Pleadings for Dismissal and Sanctions. In said ruling, the district court found based on "material filed in support of defendant's motion, from independent expert laboratory analysis and from the testimony and evidence addressed at the evidentiary hearing that the tape was deliberately altered and fabricated in two ways: (1) certain admissions by plaintiff were erased, and (2) certain admissions by plaintiff were "over dubbed" with statements neutralizing the effect of these same admissions."[3]

The Court further noted, "[t]he experts' opinions and findings are that the "original' tape that was produced by plaintiff: (*1*) is not a recording of the conversation it purports to represent, (2) is not the recording made between plaintiff and defendant officials, (3) is a false recording of those purported events, and (4) has been edited and deliberately altered in an attempt to fabricate a single, continuous recording between the parties. The court agrees with these opinions and findings and also determines that plaintiff gave untruthful testimony at the hearing to the effect that he did not stop-start the recording device on his person at the aforesaid conference with defendants, and to the effect that the tape was not altered."[4] The district court then

[3]Memorandum Ruling of August 29, 1997 at 2.

[4]*Id.* at 4.

granted Trinity's motion to dismiss Gonzalez's claim and awarded attorney's fees and expenses in connection with its motions.

Gonzalez appeals the court's order imposing sanctions and dismissing his case complaining that the district court abused its discretion by holding an evidentiary hearing in conjunction with defendant's Motion to Strike Plaintiff's Pleadings for Dismissal and Sanctions, thereby denying Plaintiff his right to a jury trial; and failing to use the least severe sanction available by dismissing Plaintiff's entire claim pursuant to its inherent powers and Fed. R. Civ. Pro. 37(b)(2). Additionally, Gonzalez appeals the district court's denial of his Motion for Partial Summary Judgment.

## Discussion

We review the district court's imposition of sanctions and dismissal of Plaintiff's case for abuse of discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27, *reh'g denied,* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991); *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.,* 2 F.3d 1397, 1410 (5th Cir.1993) *cert. denied, Fox v. Natural Gas Pipeline Co. of America,* 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). In dismissing Plaintiff's claim, the district court appears to have relied on Fed. R. Civ. Pro. 37(b)(2)(C) and the Fifth Circuit opinion of *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir.1995), in which a plaintiff's claim was dismissed pursuant to the district court's inherent powers under Article III.

Federal Rule of Civil Procedure 37(b) addresses the issue of sanctions and provides in relevant part:

7

(2) Sanctions by a court in which action is pending.  If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

In *Woodson,* this court also upheld dismissal of a plaintiff's claim based on the inherent power of a district court.  In *Woodson* we stated:

> The federal courts are vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  [*Link v. Wabash R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 1389, 8 L.Ed.2d 734 (1962).]  This power is necessarily incident to the judicial power granted under Article III of the Constitution. [*Natural Gas Pipeline,* 2 F.3d at 1406.]  This includes the power of the court to control its docket by dismissing a case as a sanction for a party's failure to obey court orders.  [*In re United Markets Int'l, Inc.,* 24 F.3d 650, 654 (5th Cir.) *cert. denied,* 513 U.S. 946, 115 S.Ct. 356, 130 L.Ed.2d 310 (1994).] However, when these inherent powers are invoked, they must be exercised with "restraint and discretion."  [*Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132.]  Dismissing a case with prejudice is a harsh sanction, but we will uphold an involuntary dismissal unless the district court has abused its discretion.  [*Id.* at 54-56, 111 S.Ct. at 2138.]  This Court has held that such sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." [*United Markets,* 24 F.3d at 654 (quoting *Pressey v. Patterson,* 898 F.2d 1018, 1021 (5th Cir.1990)).]

*Woodson,* 57 F.3d at 1417 (some citations omitted).

Further, "a court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith

8

exists and in assessing fees."[5]

This Court notes that dismissal with prejudice is an "extreme sanction that deprives the litigant of the opportunity to pursue his claim." *Woodson,* 57 F.3d at 1418 (quoting *Callip v. Harris County Child Welfare Dept.,* 757 F.2d 1513, 1519 (5th Cir.1985)). Additionally, the district court is bound to impose the least severe sanction available. *Carroll v. Jaques Admiralty Law Firm,* 110 F.3d 290 (5th Cir.1997).

First, this Court finds no abuse of discretion in the court's actions as to its grant of expenses and attorney's fees and thus AFFIRMS the district court's grant of reasonable expenses including attorney's fees as sanctions for Plaintiff's conduct.

Second, this Court AFFIRMS the district court's use of an evidentiary hearing in conjunction with defendant's Motion to Strike Plaintiff's Pleadings for Dismissal and Sanctions. An evidentiary hearing in order to determine the validity of a claim of willful and bad faith fabrication of evidence and an abuse of the judicial process, is wholly within the discretion of the district court and does not deprive Plaintiff of his right to a jury trial on his claims. Said evidentiary hearing would be in the nature of a hearing required pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which requires the district court to exercise a "gate keeping" role prior to trial to determine whether the testimony

---

[5]*Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. There is no issue of due process that need be addressed, nor that was raised by Gonzalez.

9

offered by an expert is sufficiently reliable to be presented to the jury.  Such is the case with the "altered" tape recording at issue.  Allegations made by defendant require the exercise of the district court's inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases." *Link,* 370 U.S. at 630-31, 82 S.Ct. at 1389.

Third, this Court must now address the most difficult issue presented, the dismissal of Plaintiff's entire case with prejudice as a sanction.  As noted, Rule 37(b) specifically provides for dismissal of an action for direct failure of a party to obey an order of the court.  Also, as previously noted, this Court has affirmed dismissal as a sanction under the inherent powers of the court.  *Woodson, supra.*  However, in recognizing those powers this Court also has required the least onerous sanction which will address the offensive conduct be used.  In this matter, as the district court itself noted it had available a wide selection of sanctions.  Many of the available possible sanctions would have had same or similar practical effect as to plaintiff's egregious actions and result as the dismissal.  As this is the case, this court REVERSES the district court, only in its selection of dismissal of the entire case, and REMANDS this case to the district court for selection of an appropriate sanction which fully addresses Plaintiff's egregious behavior, but falls short of the ultimate sanction of dismissal of Plaintiff's entire claim with prejudice.

Denial of Partial Summary Judgment

10

As previously stated, the crux of Plaintiff's discrimination claim against Trinity is plaintiff's nationality, Hispanic, and his allegations that he was not receiving the same benefits as other employees at Trinity while he was working at the Trinity Gretna shipyard. Trinity alleges that Plaintiff was hired as an independent contractor and a "job shopper" and therefore, Plaintiff must establish he was in fact an employee and Trinity was his employer, in order for Gonzalez to maintain his claims under the Louisiana discrimination statutes.[6]

Accordingly, Gonzalez, on June 4, 1996, filed a Motion for Partial Summary Judgment seeking a ruling from the district court that Plaintiff was an "employee" within the meaning of Title VII and that Trinity was liable for discriminating against Plaintiff in the terms and conditions of his employment, prior to his discharge. The Motion for Summary Judgment was heard on briefs and subsequently denied by the district court in an order and reasons dated July 17, 1996. The district court essentially ruled, that in applying the "hybrid test" for a determination of employee status, cited in *Deal v. State Farm Mutual Ins. Co. of Texas,* 5 F.3d 117, 118-19 (5th Cir.1993), that the determination of whether Gonzalez was an "employee" or "independent contractor" "requires a factual analysis of often conflicting allegations" and as such, the district court found that the "issue is not amenable to summary

---

[6]Both parties agree that the analysis of plaintiff's claims under La.Rev.Stat. § 51:2231 and La.Rev.Stat. § 23:1006 utilize the same analysis as a claim for discrimination brought under Title VII.

11

judgment at this time."[7]

The district court's denial of Plaintiff's Motion for Partial Summary Judgment is not a final decision as to which this Court has appellate jurisdiction. *See Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1291 n. 7 (5th Cir.1994) (citing 10 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2715 p. 636). Consequently, Plaintiff's appeal as to this action by the district court is DISMISSED.

Conclusion

This Court finds Gonzalez's behavior as reprehensible as did the district court and recognizes with approval the district court's exercise of its right to protect the integrity of the judicial process. However, as recognized by the district court in its reasons, dismissal of the entire claim is extreme and the district court had available several other options which would have addressed the offensive behavior with equally deterrent effect. Accordingly, the dismissal of Plaintiff's claim with prejudice is REVERSED. This Court, however, AFFIRMS the awarding of reasonable costs and attorney's fees in connection with the motions and holding of an evidentiary hearing by the district court in order to determine the validity of the "original" tape in question. Although Gonzalez also raises on appeal the district court's denial of his Motion for Partial Summary Judgment, Plaintiff's appeal of the denial of the Motion for Partial Summary Judgment is DISMISSED for lack of appellate jurisdiction.

---

[7]Order and Reasons of July 17, 1996.

12