**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KAREN GILMER,

      Plaintiff-Appellant,

v.

COLORADO INSTITUTE OF ART,
EDUCATIONAL MANAGEMENT
CORPORATION,

      Defendants-Appellees.

No. 00-1192
(D.C. No. 99-K-270)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

During discovery in this employment discrimination case, defendants moved for dismissal alleging that plaintiff had fabricated a critical piece of evidence. The district court held a two-day hearing on the matter and concluded that plaintiff had in fact fabricated the evidence. As a sanction, the court struck the portion of plaintiff's complaint to which the evidence was relevant, thereby effectively dismissing one of plaintiff's claims. Following her voluntary dismissal of her remaining claims, plaintiff appeals. She contends that because the determination that she fabricated the evidence involved disputed issues of fact, the court denied her right to a jury by deciding the issue itself pretrial. She further contends that the court's determination that she fabricated the evidence was incorrect. We find her arguments unpersuasive and affirm. [1]

**I**

Plaintiff Karen Gilmer began working as an instructor in 1988 for defendant Colorado Institute of Art (CIA), whose parent corporation is defendant Educational Management Corporation. [2] It is unclear from the record when or if her employment with CIA terminated, but in her complaint, she alleged

---

[1]    Because the parties have demonstrated that the district court dismissed all of Gilmer's claims with prejudice, this court's show cause order regarding whether there was a final appealable order is discharged.

[2]    The Colorado Institute of Art is now known as the Art Institute of Colorado.

discriminatory activities by defendants during the period 1992 to 1994, and she brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, as well as a related breach-of-contract claim. Relevant to this appeal, she alleged that one of her students, Dan Swanson, had sexually harassed her; that she had reported the harassment to CIA management; and that CIA had failed to take any remedial action to end the harassment. In her complaint, she included the following allegation as one of her four factual paragraphs supporting this harassment claim:

> Ultimately, as part of the continuing pattern of harassment described above, Plaintiff received death threats from Mr. Swanson which resulted in his arrest in 1997 by the Denver Police Department.

Appellant's App. at 5b.

Swanson's alleged harassment included sending Gilmer letters, many of which could be described as intimate, if not love letters. The death threat (apparently there was only one) was contained in one of these letters. The body of the letter concerned a threat against Swanson that his landlord had received relating to Swanson's contact with Gilmer; that is, an anonymous telephone caller had told the landlord to tell Swanson his life was in danger if he did not stop harassing Gilmer. In the body of the letter, Swanson requested Gilmer to ask the caller to apologize to the landlord. The alleged threat against Gilmer was written

vertically in the margin of the letter and said, "You will pay for this! With your life." *Id.* at 185. Based on Gilmer's allegations of harassment and a copy of this letter, the Denver police arrested Swanson, and he was charged with the crime of harassment. His defense was that, while he wrote the body of the letter, the death threat toward Gilmer in the margin was forged. Before trial, his counsel moved for access to the original letter so it could be examined by a forensic handwriting expert. Although Gilmer later claimed she had given the original letter to the police, the prosecution could not produce it, and the court dismissed the criminal charge against Swanson.

Gilmer then brought this civil action. During discovery, defendants obtained the original letter from Gilmer, who later testified the police had returned it to her, and they had it examined by a handwriting expert. Based on Swanson's denial of making the threat, the expert's opinion that it was a forgery, and other evidence, defendants moved to dismiss Gilmer's claims for proffering fraudulent evidence, and to stay the proceedings pending resolution of the motion. The district court granted the stay and later held a two-day hearing at which a number of witnesses testified, including Swanson (by videotaped deposition) and Gilmer, handwriting experts for both sides, and police officers and others involved with the criminal charge against Swanson.

Following the hearing, the court ruled from the bench, finding that Gilmer had forged the threat. As sanctions for what it called manufacturing or tampering with evidence, the court struck from the complaint all allegations relating to harassment by Swanson and awarded attorney fees and costs for the hearing to defendants. The court thereafter granted Gilmer's motion to dismiss her remaining claims with prejudice, and she timely filed a notice of appeal.

## II

Gilmer raises two arguments on appeal. She challenges the correctness of the court's factual findings regarding the forgery. She also contends the process used to make those findings denied her right to a jury. [3] We address these arguments in reverse order.

## A

Gilmer contends that since the question of whether the death threat was a forgery was hotly disputed, the court should have allowed her harassment claim to go to the jury. "Then, if the jury's verdict supported a finding that the threat might have been traced, that would have been the proper time for the court to look into whether or not Gilmer had engaged in any serious misconduct such as

---

[3] She also contends the court erred in dismissing her claim and assessing fees and costs against her, but she does not make any argument separate from those challenging the court's ruling regarding the threat.

attempting to submit a forged document as evidence." Appellant's Br. at 15. [4]

She contends that if the court were to determine at that point that she had submitted a forged document, the appropriate sanction would be her liability for defendants' increased attorney fees and costs. By deciding the authenticity issue itself before trial, the court denied her Seventh Amendment right to have her claim decided by a jury. Gilmer cites no authority supporting this procedure for handling allegedly fabricated evidence.

We see no problem in the court's addressing the forgery question itself in the manner in which it did. Trial courts have the discretion and, in fact, the obligation to make evidentiary determinations pretrial. *Cf. Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) (noting that district court's exclusion of evidence at summary judgment stage is reviewed for abuse of discretion). Moreover, courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotation omitted), This includes the power to "levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). Many courts have found the fabrication of evidence to be an abusive litigation practice,

---

[4] As explained later, defendants' expert testified that it was his opinion someone had forged the threat by tracing Swanson's handwriting.

-6-

or even a type of fraud on the court. *See, e.g.*, *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999); *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898-99 (5th Cir. 1997); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118-19 (1st Cir. 1989); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916-17 (9th Cir. 1987).

A trial court clearly has the authority to examine the authenticity of evidence before submitting it to a jury. *See generally* Fed. R. Evid. 901. And Gilmer obviously has no right to submit fabricated evidence to the jury. Thus, a court has the discretion to decide factual disputes regarding the authenticity of evidence even when that issue also goes to the merits of the case, particularly where, as here, the evidence in question was a focal point of the offeror's complaint [5] and the court held an evidentiary hearing to protect the party's due process rights. *See Gonzalez*, 117 F.3d at 898-99 (likening procedure to court's gate-keeping role with respect to expert or scientific evidence). We see no material difference between what the court did here and the permissible levying of sanctions for discovery abuses, which may equally affect the merits of a party's claim or defense. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th

---

[5] Curiously, although the threat figured prominently in Gilmer's complaint, she attempted to downplay its significance in response to defendants' motion to dismiss, describing it as "of no apparent value in establishing Defendants' liability in this case," and "of slight importance" in demonstrating Swanson's intent. Appellant's App. at 98h.

-7-

Cir. 1983); *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977); *cf. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (rejecting due process challenge to Fed. R. Civ. P. 37(b) sanction of assuming personal jurisdiction over party who refused to comply with discovery orders regarding that issue).

The procedure Gilmer prefers--waiting to decide the issue until there is a jury verdict that would support a finding of forgery--ignores the gravity of presenting fabricated evidence. As one court explained in a somewhat similar situation,

> [t]he manufactured document would have been the linchpin of plaintiff's case. Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), *aff'd in relevant part*, 974 F.2d 982 (8th Cir. 1992). Moreover, a jury verdict in either party's favor here would not necessarily provide any indication of whether the threat was forged. We therefore conclude the district court chose an appropriate procedure for resolving the issue.

## B

Gilmer also challenges the district court's ultimate finding that she forged the document. The district court found that Swanson was credible, but Gilmer was not; that defendants' expert was credible and not contradicted by Gilmer's expert; and that Gilmer had a motive to forge the threat so the Denver police would pursue criminal charges against Swanson. She contends the court erred in finding Swanson credible because his testimony that he was not interested in Gilmer romantically is overwhelmingly contradicted by the numerous letters he wrote to her. She further contends she was impeached on only minor matters, and that her expert's opinion regarding whether the threat was a forgery contradicted the opinion of defendants' expert. She also contends there was no evidence proving that she was told by Denver police she needed a threat to have criminal charges brought against Swanson and so she supplied one. She argues that in light of these incorrect findings by the court, its determination that she forged the threat is clearly erroneous.

We review a court's ultimate imposition of sanctions based on its inherent power for an abuse of discretion. *Chambers*, 501 U.S. at 55. [6] A court abuses its

---

[6]    In their motion to dismiss, defendants suggested three bases on which the court could act: its inherent power; its sanction authority under Fed. R. Civ. P. 26(g); and involuntary dismissal under Rule 41(b). The court did not indicate under which authority it was acting, but we believe its actions are best viewed as

(continued...)

discretion when it relies on clearly erroneous fact findings. *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998). In fact, "[w]hen an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990). "Where findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Applying these standards, we cannot say that the court's finding that Gilmer forged the threat is clearly erroneous. Although we tend to agree with Gilmer that Swanson's letters appeared to show his romantic interest in her, we cannot say that his subsequent testimony that his interest was solely platonic destroyed his credibility. The court's finding that Gilmer's testimony was not credible is wholly supported by the record. As the court noted, she was

---

[6](...continued)
pursuant to its inherent power. Under any of these authorities, we would review the court's ruling for an abuse of discretion.

-10-

repeatedly impeached in her testimony, including in her knowledge of the medium defendants' expert said could have been used in forging the threat, and the areas on which she was impeached cannot be considered minor matters.

With respect to the experts' opinions, defendants' expert testified that the threat was written with an unusual ink different from that used in the body of the letter; that the threat was written after the letter had been folded; that the threat had been double- or overwritten; and that it had been traced from other Swanson writings. Gilmer's expert agreed that the threat was written with different and unusual ink and that it had been overwritten. He also stated that it was possible the threat had been traced and added after the letter had been folded, but he could not give an opinion one way or the other on these two matters. [7] Again, we see no error in the district court's finding that defendants' expert was credible and not materially contradicted by Gilmer's expert.

Finally, the court could reasonably infer from the evidence that Gilmer forged the threat because she was told she needed one to pursue criminal charges.

---

[7] Gilmer's expert testified that the reason he could say it was only possible the threat was traced was that he did not have the actual words used as the models to be traced. We note that the letter Gilmer produced contained two pages, with Swanson's handwriting filling the second page and lacking a closing. Swanson testified that the letter he sent actually contained three pages, with a closing like he usually put on his letters, and that the third page included what would have been the model for the threat, although in a different context; i.e., that Swanson was putting the threatening language in Gilmer's mouth as her reaction to his writing her letters and showing other interest in her.

Around February 24, 1997, Gilmer had reported Swanson's harassment of her to a Denver police officer. The officer testified that the police began an investigation, but did not file charges because there had been no credible threat made in conjunction with the harassment. Both the officer and Gilmer testified that the officer could have told Gilmer that there had to be a threat for the police to pursue charges. A day or two later, Gilmer took or faxed a copy of the letter containing the alleged threat to the police, and the police subsequently arrested Swanson. We conclude it is reasonable to infer from these and other facts that Gilmer knew she needed to provide the police with a threat and therefore forged the threat herself.

### III

In summary, we conclude that the district court permissibly used a pretrial evidentiary hearing to determine whether the alleged threat was forged and that its finding that Gilmer forged the threat is not clearly erroneous. Gilmer does not separately challenge the particular sanctions imposed by the district court; i.e.,

the striking of various allegations in her complaint and the award of attorney fees

and costs.  The judgment of the district court is therefore AFFIRMED.


                              Entered for the Court


                              Robert H. Henry
                              Circuit Judge