**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 31, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-20182

TIMOTHY JAY CLARK, ET AL.

Plaintiffs,

VERSUS

JANET MORTENSON, ETC., ET AL.

Defendants,

JANET MORTENSON, PERMANENT RECEIVER OF AUSTIN FOREX
INTERNATIONAL, INC., MICHAEL SHAUNESSY

Defendants-Appellees,

VERSUS

SHELDON BAUM, BRIAN BAUM

Movants-Appellants,
and

DOUGLAS BAUM

Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before EMILIO M. GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    The Movants-Appellants filed a suit on behalf of Plaintiffs

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

against Defendants-Appellees in federal district court. The suit was dismissed and Appellants were sanctioned by the court for filing a frivolous lawsuit and for their egregious conduct in the district court. Appellants appeal the district court's sanction order.

## BACKGROUND

Brian Baum, his father Sheldon Baum, and his brother Douglas Baum (hereinafter referred to as the Baums), filed a lawsuit in the United States District Court for the Southern District of Texas purportedly on the behalf of former investors of Austin Forex International, Inc., International Foreign Exchange Corp., and AusForex International, L.L.C., (collectively referred to as AFI) against, inter alia, Janet Mortenson and Michael Shaunessy. Mortenson is the Permanent Receiver of AFI and was appointed by the 250th District Court of Travis County, Texas in 1998 after AFI was forced into involuntary bankruptcy due to Russell Erxleben's, the former president of AFI, fraud in creating a ponzi scheme. Erxleben pled guilty to securities fraud and is serving seven years in a federal correctional facility in Beaumont, Texas. Shaunessy represents Mortenson in the receivership. Mortenson's and Shaunessy's efforts in the receivership returned approximately 63 cents of each dollar invested to the persons who were defrauded by Erxleben's AFI scheme.

Sheldon Baum met Erxleben while they were both serving

2

sentences for fraud in the federal penitentiary in Beaumont. Brian Baum visited Erxleben several times in the federal penitentiary and consulted with Erxleben concerning how "to go after" Mortenson and Shaunessy. Erxleben apparently blames Mortenson for the severity of his criminal sentence. After being released from federal prison, Sheldon Baum, with the assistance of his sons Brian and Douglas, began a course of conduct which ultimately resulted in the district court sanctioning the Baums, which is the subject of this appeal.

In the summer of 2002, Brian Baum sent letters to AFI investors urging them to file a class action lawsuit against Mortenson. When Mortenson learned of Baum's solicitation letters, she alerted the receivership court; State District Judge Paul Davis (who oversees the receivership) immediately issued a letter scheduling a September 20, 2002, hearing and inviting any AFI investor with complaints to appear. No investor appeared to complain at the September 20 hearing. At the conclusion of the hearing, Judge Davis entered an order finding that Mortenson had served the best interests of the receivership estate, that she had fully complied with all of the court's orders, and that she had complied with the court's instructions concerning payment of her own fees, receivership expenses, and her attorney Shaunessy's fees, and that no accounting was due until the close of the receivership.

None of the Baums appeared at the September 20 hearing before Judge Davis. Instead, on September 17, 2002, three days before the

3

hearing, Brian Baum and Baum & Baum Associates, P.A., filed a federal lawsuit in Houston, purportedly on behalf of four AFI investors (Clark, Howard, Johnson, and Beck).  The Baums alleged that Mortenson, who had been appointed receiver for AFI, breached her fiduciary duty because she failed to provide a regular, detailed accounting of receivership funds and that Mortenson and Shaunessy embezzled funds from the receivership by falsifying legal expenses and generating legal fees by pursuing wasteful lawsuits. The Baums alleged that these acts violated their clients' civil rights under federal law.  They also averred that Mortenson and Shaunessy were guilty of:  (1) conspiracy to violate federal law; (2) embezzlement of government property; (3) fraud upon the government; (4) mail fraud; and (5) various RICO violations.[1]

On October 22, 2000, the court, <u>sua sponte</u>, ordered the plaintiffs to replead because the plaintiffs:  (1) failed to explain how Mortenson acted outside her authority as receiver; (2) failed to describe an act of Mortenson that would cause the loss of her immunity as a receiver; and (3) appeared to use a civil rights suit to collaterally attack interlocutory state-court decisions. The court advised the plaintiffs that if the amended complaint was

---

[1]The same day the Baums filed their federal suit, Brian Baum faxed a copy of the complaint to the <u>Austin American-Statesman</u>, which printed a story about how Mortenson was accused of "conspiring with her lawyers to embezzle money from the nearly 32 million collected."  The Baums also mailed a copy of the lawsuit and newspaper article to about 20 AFI investors.  The Baums, however, did not serve Mortenson or Shaunessy with the lawsuit until two months later.

again baseless in law or fact, they bore the risk of sanctions.

The plaintiffs filed an amended complaint, deleting certain plaintiffs and defendants and averring, inter alia, that Mortenson: (1) breached her fiduciary duty by failing to furnish investors with a detailed accounting; (2) breached her fiduciary duty by instituting worthless claims for her financial gain and the financial gain of Shaunessy; and (3) eroded investor confidence by substituting the law firm that had originally represented her in her capacity as receiver with a new firm.

Mortenson and Shaunessy (the "appellees") filed a motion to dismiss for failure to state a claim. They also moved for sanctions and a permanent injunction against further proliferation of litigation. The district court held more than 30 hours of hearings to address the motions. The district court first converted the motion to dismiss into a motion for summary judgment and granted the motion in favor of the appellees, finding that the complaint failed to state a cause of action upon which relief could be granted. The court found that the "plaintiffs failed to articulate a single fact to support their claims in the original complaint, the amended complaint, or during the protracted hearings." The district court also imposed sanctions and issued a permanent injunction against the Baums enjoining them from filing any further lawsuits against Mortenson, Shaunessy, and related parties without advanced permission. The district court made the following findings:

5

Most of the blame for the filing of the frivolous lawsuit fell on the Baums. The court found that Sheldon had graduated from Tulane and attended one semester of law school (Sheldon sometimes went by the name of Abe Baum, which was the name of his dead father who had been a lawyer and had practiced in New Jersey). Sheldon was one of the owners of Creditor Funds Recovery, a proprietorship that located missing creditors for unclaimed funds in bankruptcy court. Although Sheldon formally withdrew from Creditor Funds Recovery on the registration with the county clerk, he continued to run the business through his sons. Brian Baum is the elder son of Sheldon. He graduated from law school and passed the Pennsylvania bar. Brian operated his law practice from the family home located in Katy, Texas. "His assumed name certificates [were] for Baum & Baum, and one of them include[d] his non-lawyer brother as principal." Douglas Baum is the non-lawyer son of Sheldon and brother of Brian. Douglas stated that he operated Creditor Funds Recovery.

The district court found that the Baums recruited four people to join the suit as plaintiffs by telling them that: (1) there were funds in the receivership that Mortenson had not disclosed and (2) they could get other funds by seeking an accounting of assets that Mortenson had not recovered. The plaintiffs all had accounts with AFI. The plaintiffs either signed contingent-fee contracts with Baum & Baum, wrote letters of authorization, or otherwise indicated their interest in joining the lawsuit. The fee contract

6

granted the authority to seek an accounting and to recover other assets of the receivership. The district court found that each of the plaintiffs had continually received notices from Mortenson with regard to settlements, disbursements, hearings, and other events in the course of the receivership. None of the plaintiffs knew anything about errors or omissions by Mortenson and admitted they had no reason to bring suit. Nor did the plaintiffs know anything about the Baums -- except for the solicitation letter.[2]

With regard to the Baums, the district court found that Sheldon proclaimed himself the instigator of the suit. He determined whom to name as plaintiffs, what claims to file, whom to sue, and where to file the suit. He polled attorneys and receivers for advice with regard to the complaint and conferred with the plaintiffs. The plaintiffs all believed that Sheldon was an attorney. Sheldon proclaimed his personal hostility to Mortenson. The district court found that Sheldon's "relationship to the truth [was] pathological." The district court noted that in response to "direct questions about simple objective data," Sheldon said "what he preferre[d] the facts to be rather than what they demonstrably [were]." The district court provided the following examples:

1.    Sheldon swore that he graduated from Tulane Law

_____

[2]The district court ultimately imposed some minor sanctions on the named plaintiffs because in the district court's words the plaintiffs thought they could scare Mortenson into giving them money by hiring people they did not know to go collect money that was not due to them. These plaintiffs have not appealed their sanctions.

7

School. However, Tulane advised the court that Sheldon had not graduated from their law school, and Sheldon could produce only a registrar's letter reflecting that he had completed 12 hours.

2. Sheldon testified that he did not have a Texas driver's license because he no longer drove. However, he then stated that the license had expired and that he had "turned it back." He explained that earlier, when he testified that he did not have a license, he meant that he did not have it with him.

3. Although Sheldon had stated that he no longer drove, he later explained to the court that he was present in the courtroom because he had driven his sons to the hearing.

4. After telling the court that he was retired and that he only answered telephones for his sons' business, Sheldon admitted that he was the driving force behind the litigation. Others testified that their contact was with Sheldon, not with his sons.

The district court found that Sheldon had extensive experience with courts, noting that: (1) he was convicted of felony theft of his brother's car; (2) he had filed involuntary bankruptcy petitions against others and had been barred by the courts from filing similar petitions in the future; and (3) his father and son were lawyers. The district court found that Sheldon had a history of acting on "greed, malice, and illness."

With regard to Brian Baum, the district court noted that he was an attorney licensed to practice in Pennsylvania and that he had signed the pleadings in the instant suit. The district court found that Brian "would not -- could not perhaps -- tell the truth." As examples, the court recalled that:

1. Brian had stated that his father was licensed as an

8

attorney by New Jersey.  Realizing that the lawyer he was referring to was his grandfather and not his father, Brian "just kept talking."

2. Brian stood mute as Sheldon "told the court his lies."

3. After examining the complaint and amended complaint paragraph by paragraph, Brian admitted that the claims were fabricated.  However, Brian persisted in his argument that some of the actions of the receiver were "'unneeded.'"

4. Brian also disclaimed having prepared pro se pleadings for several of the plaintiffs.  However, the plaintiffs testified that they received the pleadings from Brian and were told to sign and mail them to the court.

5. Besides denying that he had prepared the pleadings, Brian "violated the proper legal practice when he prepared pleadings for laymen to file as if they had prepared them themselves."

6. Brian told the district court that Creditor Funds Recovery was defunct and that his father had discontinued business six or seven years ago.  The court noted, however, that the "assumed name [was] still active" and that while Sheldon withdrew from the business, Brian was among the surviving principals.

7. Brian listed Douglas as a principal of Baum & Baum, knowing that the firm was not a professional association.

8. Brian had filed a special appearance, an answer, and a plea in abatement in a state court defamation suit filed by Mortenson and Shaunessy against, inter alia, the plaintiffs and the Baums notwithstanding that the district court had ordered the plaintiffs or their agents to not file anything with a court or administrative agency until after a hearing scheduled for December 6, 2002.  The district court found that by filing the above pleadings, as well as a motion to dismiss in the instant suit, Brian violated an earlier-imposed preliminary injunction.

9

9. Brian included as a plaintiff Gary Johnson notwithstanding Johnson's written statement on the contingency fee contract that he had no claim personally and that the claim was to be pursued on behalf of a family partnership.

10. Brian, in the instant lawsuit, was purportedly representing investors who had lost money as the result of the mismanagement of AFI by its president, Russell Erxleben. However, in other instances, Brian represented people who helped Erxleben hide profits and people who were resisting the receiver. The district court found that Brian failed to disclose his prior representation to the present plaintiffs and that he was "conflicted."

11. Brian had a history of filing lawsuits against receivers and the receivers' attorneys.

The district court found that Douglas Baum:

1. Assisted his family in the suit and "argued for their positions in the face of contrary facts."

2. Clearly acted for his father and brother.

3. Signed the "assumed name registration [for Baum & Baum] as an owner, knowing it was not a professional association" and that he was not a lawyer.

The district court concluded that the Baums had brought the suit "to satisfy their illusion of hidden funds or to extort deals for their other clients." The court found the lawsuit to be fraudulent and that "[o]nce instituted, the Baums maintained [the suit] with singular ineptitude." The district court noted that when asked to explain their case, "Brian and Sheldon Baum did not tell the truth."

The district court ordered a variety of sanctions against the Baums including restraining orders, orders to write letters of

10

apology, and an order forbidding Sheldon from practicing law either formally or informally.  The Baums appeal the following actions of the district court:

1.     The district court, finding that Brian had violated the preliminary injunction, ordered him to serve ten days in jail.  The court found further that Sheldon had aided and abetted Brian in violating the preliminary injunction and ordered that he also serve ten days in jail.

2.     Brian and Sheldon were ordered to pay $100,000 to Mortenson for the legal fees she and Shaunessy incurred.

3.     The district court barred the Baums from filing, directly  or indirectly, any papers in the courts of Texas or Louisiana, state or federal, or with an executive agency without the written permission of a judge.

## DISCUSSION

**I.     Whether the district court abused it discretion in ordering Brian and Sheldon to be incarcerated ten days for contempt.**

While the Baums appeal the district court's sanction order, they do not contest any of the district court's findings with regard to their deceitful behavior, the frivolity of the complaint, or the vexatious nature of the litigation.  Accordingly, they have abandoned any challenge to the district court's factual findings on appeal.  Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

The appellees aver that the appeal of the incarceration aspect of the sanction order is moot inasmuch as the Baums have served their sentences.  The Baums argue that the "collateral consequences" they will experience as a result of the sanction

11

order allow review of this aspect of the sanction order. See Sinclair v. Blackburn, 599 F.2d 673, 675 (5th Cir. 1979) (holding that release from custody does not moot a case where the prisoner continues to suffer collateral consequences as a result of his conviction).

The Baums fail to specifically state what "collateral consequences" they will experience. To the extent they argue that the fact that they were sentenced to jail time could be used to impeach their testimony in the future and could adversely impact their careers, as pointed out by the appellees, the order of incarceration can do no more harm than the Baums' actions in the past, i.e., a state theft conviction and sentence, a federal bankruptcy fraud conviction and sentence (Sheldon Baum), a theft by check conviction, a deferred adjudication for cocaine, and marijuana possession (Brian Baum). As the Baums have served their jail time and they have failed to show that they will suffer any specific collateral consequences as a result of the incarceration contempt order, this court finds that the appeal of the incarceration order is moot. Schlang v. Heard, 691 F.2d 796, 799 & n.6 (5th Cir. 1982) (finding a claim is moot "in the sense that . . . there is simply no relief this court can give") (habeas proceeding).

**II.  Whether the district court's sanction order violated the Baums' constitutional rights, Federal Rule of Civil Procedure 11, or 28 U.S.C. § 1927.**

12

The federal courts are vested with the inherent power "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Gonzalez v. Trinity Marine Group, Inc., 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted). The invocation of these inherent powers must be done with "'restraint and discretion,'" and should comply with the mandates of due process. Id. (citation omitted). Sanctions under the inherent power should be confined to instances of "'bad faith or willful abuse of the judicial process.'" Id. (citation omitted).

A court may also impose sanctions under 28 U.S.C. § 1927. Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." Edwards v. General Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998). Lastly, Federal Rule of Civil Procedure 11 directs district courts to impose sanctions against a litigant who signs frivolous or abusive pleadings.

A district court's sanction order, whether premised on Rule 11, § 1927, or its inherent powers to impose sanctions is reviewed for abuse of discretion. Tollett v. City of Kemah, 285 F.3d 357, 363 (5th Cir. 2002). The district court did not state whether the

13

basis for the sanctions was under Rule 11, § 1927, or its inherent power. A court need not provide specific factual findings in every sanction order. Topalian v. Ehrman, 3 F.3d 931, 936 (5th Cir. 1993); Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 883 (5th Cir. 1988) (en banc).

The Baums aver that the contempt/sanction order was criminal in nature and that they were entitled to certain constitutional protections. A contempt order is characterized as civil or criminal based on its primary purpose. FDIC v. LeGrand, 43 F.3d 163, 168 (5th Cir. 1995). "[T]he ultimate test for determining the civil or criminal character of a contempt order is 'the apparent purpose of the trial court in issuing the contempt judgment,' a punitive purpose or one 'designed to vindicate the authority of the court' establishing the criminal nature of the order, while a coercive or remedial purpose characterizes a civil contempt." Thyssen, Inc. v. S/S Chuen On, 693 F.2d 1171, 1173-74 (5th Cir. 1982) (quoting Smith v. Sullivan, 611 F.2d 1050, 1053 (5th Cir. 1980)). "When a contempt order contains both a punitive and a coercive dimension, for purposes of appellate review it will be classified as a criminal contempt order." LeGrand, 43 F.3d at 168.

The contempt order in the instant case does not expressly state whether it is a civil or criminal contempt order. However, the apparent purpose of the order was punitive or "designed to vindicate the authority of the court" rather than coercive or remedial. See Thyssen, 693 F.2d at 1173-74. The ten-day jail

14

sentence was punishment for past wrongs, not a sentence intended to coerce compliance with an ongoing order. Accordingly, at least part of the order is criminal, therefore for purposes of appellate review the order will be treated as criminal. See LeGrand, 43 F.3d at 168.

"While it is clear that a district court has the power to issue a criminal contempt sanction for the refusal to comply with a court order, procedures are mandated which protect the contemnor's constitutional rights." Lamar Fin. Corp. v. Adams, 918 F.2d 564, 567 (5th Cir. 1990) (footnote omitted). Rule 42 requires notice, the appointment of a prosecutor, and an opportunity to be heard. FED. R. CRIM. P. 42(a)(1)-(3).

The Baums do not contend that they did not receive adequate notice or that they did not have an opportunity to be heard. Rather, they contend that they were entitled to the appointment of an independent prosecutor and that the district court judge improperly presided over the contempt proceedings.

Notwithstanding Rule 42's requirement with regard to the appointment of a prosecutor, Rule 42(b) also provides for summary criminal contempt penalties when the judge sees or hears in-court contemptuous behavior. FED. R. CRIM. P. 42(b). Direct contempt occurs "under the [court's] own eye within its hearing." In re Terry, 128 U.S. 289, 310 (1888). Direct contempt is the "intentional obstruction of court proceedings that literally disrupt[s] the progress of the trial and hence the orderly

15

administration of justice." United States v. Wilson, 421 U.S. 309, 315-16 (1975) (footnote omitted).

Here, the Baums' contemptuous behavior before the district court as outlined by the court and which the Baums do not challenge, included lying to the district court, failing to answer the district court judge's direct questions, the unauthorized practice of law (Sheldon Baum), and admitting that the complaint was frivolous. See Howell v. Jones, 516 F.2d 53, 55, 58 (5th Cir. 1975) (failing to answer direct questions); United States v. Johnson, 327 F.3d 554, 559-60 (7th Cir. 2003) (unauthorized practice of law). Thus, the Baums were not entitled to an independent prosecutor.

The Baums also aver that because they were not given the benefit of the 21-day "safe harbor" provision of Rule 11, the sanction order must be reversed. Rule 11 provides that sanctions may be imposed only if the offending party has notice and a "reasonable opportunity to respond." FED. R. CIV. P. 11(c). Further, a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." FED. R. CIV. P. 11(c)(1)(A).

The Baums are wrong. First, the "safe harbor" provision does

16

not apply to sanctions ordered on the court's initiative. FED. R. CIV. P. 11(c)(1)(B); Elliot v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995). Thus, to the extent that the sanctions were imposed on the court's own initiative and under its inherent power, the Baums were not entitled to the 21-day "safe harbor" provision. Second, to the extent that the sanctions were imposed as a result of the appellees' motion for sanctions, the appellees were unable to comply with the requirement that the motion be served 21 days before filing it with the court because the district court ordered them to file the motion in six days. Rule 11(c)(1)(A) specifically provides that the time between service and filing may be prescribed by the court.

Sheldon and Douglas also argue that because they were not attorneys (Brian was the signatory attorney on the pleadings) or parties to the case, they cannot be sanctioned under Rule 11 or § 1927. Although it is true that Rule 11 provides for sanctions against the individual attorney or party or agent of a party who signs an abusive pleading or motion and § 1927 is limited to attorney misconduct, a district court may rely on its inherent powers to sanction the responsible party. Chambers v. NASCO, Inc., 501 U.S. 32, 42-51 (1991). In Chambers, the Supreme Court explained that a court may use its inherent power to reach misconduct that is beyond the scope of Rule 11 and § 1927. Id. at 50. Thus, this argument is also rejected.

Brian also argues that the sanctions against him were improper

17

under § 1927 as he did nothing to prolong or multiply the proceedings. Again, § 1927 provides for sanctions against an attorney who "unreasonably and vexatiously" multiplies the proceedings. Edwards, 153 F.3d at 246. "Underlying the sanctions provided in . . . § 1927 is the recognition that frivolous . . . arguments waste scarce judicial resources and increase legal fees charged to parties." Baulch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995). However, because § 1927 sanctions are "penal in nature, and in order not to dampen the legitimate zeal of an attorney in representing his client, § 1927 is strictly construed." Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994) (internal citations omitted).

Brian, as evidence that he did nothing to prolong or multiply the proceedings and that the sanctions were improper as against him, points to the fact that within three weeks of filing the amended complaint, he orally requested that the complaint be dismissed, that he later admitted that the complaint's allegations were unfounded, and that he subsequently filed a motion for dismissal with prejudice.

Simply because, in Brian's own view of the proceedings, he believes he may have acted expeditiously in seeking to have a frivolous lawsuit dismissed does not excuse his first transgression -- the filing of a lawsuit known to be frivolous. Had he not filed the lawsuit, the answers, and motions, numerous hearings would not have ensued. To hold otherwise would allow attorneys to avoid the

18

consequences of their bad faith conduct by simply dismissing a frivolous suit before sanctions are entered. Accordingly, to the extent that the sanction order against Brian was predicated on § 1927, the district court did not abuse its discretion.

## III. Whether the district court committed any other complained of errors.

The Baums make several other arguments, many of them in footnotes, claiming error. Insofar as these arguments can be understood they are outlined here and rejected by this court.

Brian avers that the district court, in imposing sanctions, erred in considering conduct that occurred in other courts. Brian contends that the district court, in referring to the case as "an example of guerrilla warfare through litigation," impermissibly considered other conduct.

Brian misstates the law. The power to punish for contempt is inherent in all courts and "reaches both conduct before the court and that beyond the court's confines." Chambers, 501 U.S. at 44. Moreover, a court can consider other litigation in imposing sanctions under § 1927. In Travelers, this court clarified that although an attorney may not be sanctioned for conduct that could not be construed as part of the proceedings before the court issuing the § 1927 sanctions, the issuing court could consider such conduct in determining whether the conduct before it was taken in bad faith or undertaken with an improper motive. Travelers, 38 F.3d at 1417-18. Here, the district court considered Brian's

19

conduct in the receivership court to determine whether the instant lawsuit and related conduct were done in bad faith. This was not improper.

The Baums, in a footnote, argue that the district court's failure to state whether it was basing the sanction order on Rule 11, § 1927, and/or its inherent power itself mandates reversal of the sanction order. Again, a court need not provide specific factual findings in every sanction order. Topalian, 3 F.3d at 936; Thomas, 836 F.2d at 883. Findings and conclusions are required only to the extent necessary to facilitate appellate review. Thomas, 836 F.2d at 883. Here, the district court's sanction order, which was ten pages in length, was sufficiently detailed for the purpose of appellate review and the fact that the district court did not state what authority it was basing the sanctions on does not require reversal.

The Baums also argue in a footnote that if the case is remanded it should not be remanded to Judge Hughes because of his comments concerning their conduct. This request, however, is untimely and Judge Hughes's comments were from an "*intra*judicial source," -- the deceitful conduct he witnessed -- and therefore cannot constitute an alleged bias. Andrade v. Chojnacki, 338 F.3d 448, 455 (5th Cir. 2003). No recusal was or is necessary.

**IV. Whether the award of attorneys' fees was unsupported and excessive.**

The Baums argue that the award of attorneys' fees in the

amount of $100,000 in favor of Mortenson was unsupported and excessive. The court ordered Brian and Sheldon Baum to pay Mortenson $100,000 for the legal fees that she and Shaunessy "incurred in this case." The court stated that "[t]his [was] a cost adjustment in this case, and it [did] not represent compensation for" defaming Mortenson. The Baums argue that the only evidence of the amount of legal fees were the fees billed by Mortenson's attorney, Janiece Longoria, in the amount of $19,727. The Baums aver further that because Shaunessy was proceeding pro se, he was not entitled to an award of attorneys' fees.

Again the Baums are wrong. First, Shaunessy was not proceeding pro se. He was also represented by Longoria. Second, there was evidence presented to the court that Mortenson and Shaunessy incurred legal fees in the amount of $103,550.05.

**V. Whether the district court abused its discretion in permanently enjoining the Baums from filing papers in Texas or Louisiana.**

The Baums aver that the district court erred in permanently enjoining them from filing papers in Texas or Louisiana courts, state or federal, or any administrative agency without the prior permission of a judge. They argue that such a requirement impermissibly infringes upon their right of access to the courts and interferes with their ability to make a living.

This court reviews a district court's grant of an injunction for an abuse of discretion. Newby v. Enron Corp., 302 F.3d 295,

21

301 (5th Cir. 2002). Federal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents. This includes enjoining future filings to protect its jurisdiction and control its docket. Farguson v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir. 1986). However, an "injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." Id.

In Farguson, the district court barred Farguson from filing any further actions against any of the defendants based on any matter set forth in the complaint. Id. at 359. This court upheld the injunction finding that it was "specific and limited" in that it related "only to the same claims against the same defendants." Id. at 360. This court noted that the injunction did not prohibit "[o]ther claims or claims against other parties." Id. This court noted that while the injunction punished Farguson for abusive litigation, the injunction served only to effectuate the court's judgment and protect the defendants from further litigation on claims which were already deemed to be frivolous. Id. However, the court noted that "a broader injunction, prohibiting any filings in any federal court without leave of that court" may be "appropriate if a litigant is engaging in a widespread practice of harassment against different people." Id.

As a preliminary matter, determining exactly what the Baums have been enjoined from doing is important. The December 23, 2002, sanction order of the district court states that the Baums

22

"directly or indirectly, may not file papers in the courts of Texas or Louisiana, state or federal, or with an executive agency without written permission of Judge Lynn N. Hughes, or Texas District Judge Paul Davis, Bankruptcy Judge Stephen Callaway, or Bankruptcy Judge William Greendyke." The wording of this sanction seems very broad, but this particular sanction was placed in the midst of the other sanctions dealing specifically with the Baums' conduct in relation to Mortenson and Shaunessy. Likewise, the judges listed as able to grant such permission all preside in courts where the Baums had filed something related to AFI matters. This sanction made permanent an earlier preliminary injunction that the Baums had violated. The wording of the district court's earlier preliminary injunction, entered on December 9, 2002, states that the Baums or people associated with Baum & Baum or Creditor Funds Recovery "may not make claims, including affirmative defenses, in municipal, state, federal, or bankruptcy courts or before administrative agencies, executive officers, or legislative officers against Janet Mortenson personally or as receiver, Janiece Longoria, Michael Shaunessy, Anne Greenberg, or their associates, partners, agents, contractors, friends, neighbors, and employees" except with the express written permission of the same judges as listed in the sanction order. Accordingly, we read the sanction order in the context of this entire litigation, and find that the Baums have not been enjoined from filing any papers in any court or agency, state or federal, but rather just as to filings against Mortenson and

23

Shaunessy and related individuals and to filings relating to AFI matters without first obtaining the permission of one of the judges involved in sorting out the mess the Baums have proliferated within our courts. This more narrow reading indicates the injunction is similar to the injunction upheld in Farguson with the exception that this injunction bars all filings against Mortenson and others, not just filings relating to AFI matters. It is hard to imagine what other legitimate claims the Baums could bring against the off limit individuals and therefore the district court did not abuse its discretion and the injunction is affirmed.

We note that our statement in Farguson, that "a broader injunction, prohibiting any filings in any federal court without leave of that court" may be "appropriate if a litigant is engaging in a widespread practice of harassment of different people," could potentially apply to the Baums. Id. If the Baums persist in a widespread practice that is deserving of such a broad sanction, then such an injunction could be appropriate. But here, as of now, we interpret this injunction as more narrow and appropriate based on the Baums' actions in relation to AFI matters.

**CONCLUSION**

The sanction order is affirmed because the district court did not abuse its discretion, committed no reversible errors, and under our interpretation the permanent injunction is sufficiently limited and appropriate based on the Baums' conduct.

**AFFIRMED.**