Timothy J. CLARK, et al., Plaintiffs,

v.

Janet MORTENSON, et al., Defendants.

No. CIV.A.H–02–3505.

United States District Court, S.D. Texas.

Dec. 23, 2002.

---

Brian Baum, Katy, TX, for Plaintiff.

Janiece M. Longoria, Houston, TX, for Defendant.

Order for Sanctions and Permanent Injunction

HUGHES, District Judge.

### 1. *Introduction.*

From its inception, this case frustrated the purposes of civil litigation. The plaintiffs' original and amended complaints state legal propositions that are wholly disconnected from the facts of the defendants' behavior. Worse than being mere failures, the pleadings are gratuitous, malicious attacks on the receiver for Austin Forex, her lawyer, other investors, and their lawyer.

The Texas securities board sued in Travis County to impose a receivership on Russell Erxleben's cluster of companies. The court appointed Janet Mortenson receiver. While Erxleben went to federal prison, she proceeded to recover about 60% of the investors' losses. Among the people she sued were the Dunns, who are Erxleben's in-laws, and Harry Nichols, who is a friend.

After messing in cases to recover transfers from Erxleben to the Dunns and Nichols, the Baum family recruited four investors to sue the receiver.

### 2. *Baum Family.*

Most of the blame for this misguided aggression falls on the Baum family. There are five Baums. Abe Baum, who is now dead, was a lawyer in New Jersey, admitted October 1, 1933. Abe Baum had no part in this, except that his son occasionally appropriates his name and law license.

Sheldon Baum is one of Abe Baum's sons. Sometimes he calls himself Abe or Abbe. Sheldon Baum graduated from Tulane, and he went to its law school one semester in 1953. Sheldon Baum was among the owners of Creditor Funds Recovery, a proprietorship that located missing creditors for unclaimed funds in bankruptcy court. Although Sheldon Baum formally withdrew from the business on the registration with the county clerk, he continues to run it through his sons.

Brian Baum is the elder son of Sheldon Baum. He graduated from law school and passed the bar in Pennsylvania. Brian Baum operates his law practice from the family house in Katy, a west Houston suburb. His assumed name certificates are for Baum & Baum, and one of them includes his non-lawyer brother as a principal.

Douglas Baum is the non-lawyer son of Sheldon Baum and brother of Brian Baum. He says that he now operates Creditor Funds Recovery. He generally assists his father and brother.

Lucretia Baum is Sheldon Baum's wife. Although her name appears on the Creditor Funds Recovery certificate, she has not apparently been active in the Austin Forex cases.

### 3. *Plaintiffs.*

The Baums recruited four people to join this suit by telling them that (a) there were funds in the receivership that Mortenson had not disclosed and (b) they could get money by seeking an accounting and assets that Mortenson had not recovered. They may have been told about waste and conflicts of interest. All of them had accounts with Erxleben's all-star investment company. They are businessmen in Austin, Denver, and Waco, plus a lawyer in Boise.

### 4. *Plaintiff Misconduct.*

The plaintiffs signed contingent-fee contracts with Baum & Baum, wrote a letter of authorization, or said "include me." The fee contract says it has authority to seek an accounting and to recover other assets of the receivership. Fairly read, it would include suing for those things.

Each of the plaintiffs had gotten the continual notices from the receiver of settlements, disbursements, hearings, and other events in the course of the receivership. Each of the plaintiffs knew nothing about errors or omissions by the receiver. Each of the plaintiffs knew nothing of the Baums—nothing other than the solicitation letter.

No plaintiff asked for the specifics of the firm that sought to represent him. No plaintiff asked for details of the need for an accounting, not even the lawyer. No plaintiff asked for a copy of the papers sent in his name. No plaintiff called to check the status of his claim. Hearing the promise of big recoveries in class actions, these men loosed people they did not know to start fights with others over claims that they did not understand. Without the casual participation of the plaintiffs, the Baums would not have had a vehicle.

The response of the plaintiffs to their discovery of what had been done in their names had the potential to mitigate their responsibility. One plaintiff went immediately to a new lawyer and had him write Mortenson immediately disclaiming knowledge of the accusations in the complaint. When he discovered that he had authorized the Baums to act for his family business, he immediately corrected his initial assertion that he had done nothing to start the suit. He has promptly been candid and apologetic, admitting his error.

Two plaintiffs compounded their error by calling the Baums and asking them to help them. They relied on the Baums to answer for them in the slander suit that the receiver brought in response to the Baums' sending the federal complaint to the Austin newspaper. They relied on the Baums' advice not to appear in federal court when they had been ordered to be present in person. When they later did appear they admitted their errors, confessing total ignorance about the allegations

and little understanding of what they had been told by Sheldon Baum.

One plaintiff was as flippant in his response to this court's orders as he was to his retaining the Baums. In the case of this plaintiff, he cannot plead the ingenuity of the layman when dealing with these processes for he is a lawyer of some maturity and claimed sophistication. He swore to varying recollections of his authority to the Baums. His affidavit says he did not authorize them in writing; his oral testimony was that he may have signed the contract and that he may have said something that could have been construed as approval.

He did not disclaim the facts promptly. He sent the court a letter saying he could not be here for the hearing instead of moving for a continuance. After having filed the letter directly and after having a copy of the complaint, he used the Baums to file a notice of dismissal. Later, he swore that he fired the Baums, but he never moved for substitution of counsel or even made a pro-se appearance.

Even though he had the means through the Internet to see all orders and all docket entries, he did not look. Worse, he dissembled about the ability to use the judiciary's nationwide system. Had access not been available, he did not order copies from the court or otherwise see what he had been ordered to do and what had been done in his name. While the layman from Waco was clear and contrite, the lawyer from Boise was evasive and contradictory.

Their sanctions will be proportionate.

### 5. *Sheldon Baum.*

Sheldon Baum proclaimed himself the instigator of this suit. He determined who to name as plaintiffs, what claims to file, whom to sue, and where to file. He polled attorneys and receivers for advice on the

complaint and conferred with the plaintiffs. They all believed that he was an attorney, with good reason. He also proclaimed his personal hostility to the defendants.

Sheldon Baum's relationship to the truth is pathological. In response to direct questions about simple objective data, he says what he prefers the facts to be rather than what they demonstrably are.

- Sheldon Baum swore that he graduated from Tulane law school. The office of the general counsel at Tulane said Sheldon did not graduate, and Baum himself offered in evidence a registrar's letter attesting that he had completed twelve hours.
- Sheldon Baum swore that he did not have a Texas driver's license because he did not drive anymore. In the same afternoon he said that it had expired, he had turned it back, and he only meant that he did not have it with him. He renewed it in the fall of 2001 according to the state's web site.
- He said that he did not drive anymore and then minutes later that he was in the court house only because he had driven his sons to the hearing.
- After telling this court that he was retired and only answered telephones for his sons' business, he admitted that he was the driving force behind this litigation. Others testified that their contacts were with him and not with his sons.

These examples are taken because of their clarity. Similar conflicts exist between the statements of father and sons as between different versions of the father's own words.

Sheldon Baum has had extensive experience with courts. He bears a felony conviction for procuring the theft of his brother's car in the 1980s. He has filed involuntary petitions in bankruptcy against others and has been barred by the court from ever doing it again. His father and son were lawyers. His participation in this lawsuit reveals another installment in his history of acting on greed, malice, and illness. His obstruction in this case earns him the obligation (a) to pay his victim's attorneys' fees that are rounded down and fixed at $100,000 (b) to spend ten days in the custody of the marshal, and (c) to file nothing with courts or agencies without written approval of this court.

## 6. *Brian Baum.*

Brian Baum is a lawyer licensed by Pennsylvania. He signed the pleadings. He would not—could not perhaps—tell the truth. Brian Baum told the court that his father was licensed as a lawyer by New Jersey. When it became clear that the lawyer was his grandfather, not his father, he just kept talking. Brian Baum sat mute while his father told the court his lies, including stories about Sheldon Baum's appearances as a lawyer in the district court in Travis County.

After a paragraph-by-paragraph examination of the claims in both complaints, Baum admitted that each claim was fabricated. He persisted in his argument that some actions of the receiver had been "unneeded."

Brian Baum said he did not prepare purported pro-se responses to the suit in Travis County for William Beck and Timothy Clark. Beck and Clark said they received the pleadings from Baum in the mail and were told to sign and mail them to the court. Besides the misrepresentation, Baum violated the proper legal practice when he prepared pleadings for laymen to file as if they had prepared them themselves.

Brian Baum told the court that Creditor Funds Recovery was a defunct business that his father had discontinued six or seven years ago. The assumed name is still active, and while Sheldon Baum with-

drew about five years ago, Brian Baum is among the surviving principals. Brian Baum listed Douglas Baum as a principal of his law firm, Baum & Baum, Associates, P.A. Incidentally, the firm is not a professional association.

Brian Baum said he had to file an answer in state court in violation of this court's order to save his "due process" rights. His violation of the injunction made no sense because he had already answered for them, making the second answer unnecessary. Actually, the second answer was worse than redundant; for his poor clients he tricked them into pleading over their own signatures instead of his that the allegations in this suit were true. Regardless of the legal propriety of his concept, he knew that he had been enjoined from filing and that covered direct and indirect filings. He also filed directly a notice of dismissal after the injunction.

Brian Baum included Gary Johnson as a plaintiff when he clearly wrote on the fee contract that he had no claim and that the claim was for the family partnership.

Brian Baum represents investors who were victims of Erxleben in this suit. In state courts and bankruptcy courts in Houston and Shreveport, he represents people who helped Erxleben hide his profits, people resisting the receiver like the Dunns and Nichols. Of course, he disclosed none of this to his clients in this case. He is conflicted, as they say in California, irretrievably. It is hard to tell whether Baum is motivated by being in the pay of the Dunn–Nichols–Erxleben interests or by some interest of his own.

As a tactic in other suits in this saga, Brian Baum has filed and procured the filing of grievances against the receiver, her two lawyers, and a lawyer for other investors.

■ Brian Baum will pay the attorneys' fees provoked by this action, will be enjoined from filing anything without the permission of the three judges who have active cases with him, and will be confined by the marshal for ten days for violating the injunction.

### 7. *Douglas Baum.*

■ Douglas Baum assisted his family in this suit and argued for their positions in the face of the contrary facts. He has clearly acted for his father and brother. He signed the assumed name registration as an owner, knowing it was not a professional association and he was not a lawyer. His participation all along as well as his persistence earn him the sanction of preclusion from the court house.

### 8. *Sanctions.*

The Baums have wasted the time and money of the defendants and the scarce resources that the taxpayers entrust to the judiciary. They have flouted authority of this court—an authority they invoked. They have no concept of the purpose and function of courts. They must compensate, and they must be excluded.

A. *Brian Baum.*

1. Because he violated this court's preliminary injunction, Brian Baum must report to the United States Marshal on December 23, 2002, at 10:00 a.m., and remain there until January 4, 2003, at 10:00 a.m.

2. Brian Baum may not file papers, directly or indirectly, in the courts of Texas or Louisiana, state or federal, or with an executive agency without written permission of Judge Lynn N. Hughes, Texas District Judge Paul Davis, Bankruptcy Judge Stephen Callaway, or Bankruptcy Judge William Greendyke.

3. Brian Baum may not go within 500 feet of Janet Mortenson, Michael Shaunessy, Janiece Longoria, Ann

Greenberg, their agents or family unless it is in a court house.

4. Because his conduct was intentional, expressing malice as well as dishonesty, Brian Baum will pay Janet Mortenson $100,000 by January 10, 2003, for the legal fees Shaunessy and she incurred in this case. This is a cost adjustment in this case, and it does not represent compensation for his defaming her.

5. Brian Baum will write an apology in clear, simple, and direct language to Clark, Beck, Howard, Gary Johnson, and the Johnson Family Business Group, Limited, for his conduct.

6. Brian Baum will write a letter to each person who received a copy of the original or amended complaint explaining in clear, simple, and direct language that the claims against Mortenson were false and that the complaint should not have been filed.

7. By noon December 17, 2002, Brian Baum will give Michael Shaunessy and Janiece Longoria the billing records of all telephone, land and cellular, and facsimile lines that Brian Baum, Sheldon Baum, and Douglas Baum have used since July 1, 2002. Brian Baum will continue to send these records as he receives them from the company for service through January 31, 2003.

8. By noon December 17, 2002, Brian Baum will give Michael Shaunessy and Janiece Longoria a list of people, with addresses and telephone numbers, with whom he has communicated about this case, before or after it was filed.

9. By noon December 18, 2002, Brian Baum and Douglas Baum will correct the assumed name certificates for Baum & Baum, P.A., and Baum & Baum, Associates, P.A.

B. *Sheldon Baum.*

1. Because he aided Brian Baum in violating this court's preliminary injunction, Sheldon Baum must report to the United States Marshal on December 23, 2002, at 10:00 a.m., and will remain in his custody until January 4, 2003, at 10:00 a.m.

2. Sheldon Baum may not file papers, directly or indirectly, in the courts of Texas or Louisiana, state or federal, or with an executive agency without written permission of Judge Lynn N. Hughes, Texas District Judge Paul Davis, Bankruptcy Judge Stephen Callaway, or Bankruptcy Judge William Greendyke.

3. Sheldon Baum may not—directly or indirectly, casually or formally—practice law anywhere at anytime.

4. Sheldon Baum may not go within 500 feet of Janet Mortenson, Michael Shaunessy, Janiece Longoria, Ann Greenberg, their agents or family unless it is in a court house.

5. Because his conduct was intentional, expressing malice as well as dishonesty, Sheldon Baum will pay Janet Mortenson $100,000 by January 10, 2003, for the legal fees Shaunessy and she incurred in this case. This is a cost adjustment in this case, and it does not represent compensation for his defaming her.

C. *Douglas Baum.*

1. Douglas Baum may not file claims, directly or indirectly, in courts or with agencies in the state of Texas without the express written permission of Judge Lynn N. Hughes.

2. Douglas Baum may not go within 500 feet of Janet Mortenson, Michael Shaunessy, Janince Longoria,

Ann Greenberg, their agents or family unless it is in a court house.

### 9. *The Plaintiffs.*

Although Sheldon Baum and Brian Baum caused this suit, the individual plaintiffs bear some of the responsibility. Brian Baum had a written contingency fee agreement with Beck, Clark, and the Johnson Family Business Group, Limited. Baum had some sort of understanding with Howard. A reading of the agreement authorizes Baum to pursue an accounting from Mortenson.

### A. *Johnson Family Business Group, Limited.*

■ The Johnson Family Business Group, Limited, must pay Janet Mortenson $1,000 for her legal fees in this case by January 10, 2003.

### B. *Timothy J. Clark and William B. Beck.*

■ Timothy J. Clark and William B. Beck must each pay Janet Mortenson $3,500 for her legal fees in this case by January 10, 2003.

### C. *John P. Howard.*

■ 1. John P. Howard must pay Janet Mortenson $17,500 for her legal fees in this case by January 10, 2003.

2. John P. Howard must give his cellular telephone number to Janiece Longoria and Michael Shaunessy by January 10, 2003, and his telephone records for that line since September 1, 2002, and his records of calls to the Baums' numbers in 2001 and 2002 from all his lines.

### 10. *Conclusion.*

This case is an example of guerilla warfare through litigation. The Baums brought this suit to satisfy their illusion of hidden funds or to extort deals for their other clients. These claims were fraudulent. Once instituted, the Baums maintained them with singular ineptitude. When asked to explain their case—or anything else—Brian and Sheldon Baum did not tell the truth.

While the Baums made victims of their clients, the Baums could not operate without laymen willing to seek "recoveries" from other people without knowing their agents and their facts. The clients are like somebody who thought he could get money by hiring a stranger to scare a guy into paying the money he owes. The client then discovers that his agent has exceeded his authority by breaking a couple of legs.