# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 3, 2008

Charles R. Fulbruge III
Clerk

Nos. 06-20386 & 06-20446

DOUGLAS BAUM

Movant - Appellant

v.

BLUE MOON VENTURES, LLC; RANDY W WILLIAMS,
Chapter 11 Trustee for the estate of Zouhair "Danny" Hilal

Parties-in-Interest - Appellees

Appeals from the United States District Court
for the Southern District of Texas

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant, Douglas Baum ("Baum"), appeals the modification of an injunction issued by the district court that enjoins Baum from directly or indirectly filing claims in any federal or state court or agency in Texas without the express written permission of Judge Lynn N. Hughes. Baum argues that the district court had no jurisdiction to sua sponte modify the permanent injunction, or alternatively, that the modification was too broad and an abuse of discretion.

## I. Factual & Procedural History

Douglas Baum purports to run an asset recovery business. He researches various unclaimed funds, tries to locate the rightful owner, and then gets paid either with a finder's fee or by taking an assignment. Although he claims to work

alone, the district court has determined that Douglas Baum acts in concert with his brother, Brian Baum, and his father, Sheldon Baum ("the Baums").

In September 2002, the Baums injected themselves into a federal district court case styled Clark v. Mortenson, by recruiting investors—through misrepresentation—to sue a receiver, the receiver's attorney, other investors, and those investors' attorneys. 256 F. Supp. 2d 661, 663 (S.D. Tex. 2002) ("the Mortenson case"). The district court, Judge Hughes presiding, determined that the Baums' pleadings were "gratuitous, malicious attacks with legal propositions that were wholly disconnected from the facts of the defendants' behavior." Id. at 663. The district court admonished the Baums for wrongfully interfering in the case, wrongfully holding themselves out to be attorneys licensed to practice in Texas, lying to the parties and the court, and for generally abusing the judicial system. The district court stated:

> This case is an example of guerilla warfare through litigation. The Baums brought this suit to satisfy their illusion of hidden funds or to extort deals for their other clients. These claims were fraudulent. Once instituted, the Baums maintained them with singular ineptitude. When asked to explain their case—or anything else— Brian and Sheldon Baum did not tell the truth.

Mortenson, 256 F. Supp. 2d at 668.

> The Baums have wasted the time and money of the defendants and the scarce resources that the taxpayers entrust to the judiciary. They have flouted the authority of this court—an authority they invoked. They have no concept of the purpose and function of the courts. They must compensate, and they must be excluded.

Id. at 666.

The district court sanctioned both Brian and Sheldon Baum to ten days in jail and ordered them to pay $100,000 in attorney's fees to the defendants. Id. at 666-67. The court also issued a permanent pre-filing injunction against all three Baums. Id. Douglas Baum was prohibited from "fil[ing] claims, directly

or indirectly, in courts or with agencies in the state of Texas without the express written permission of Judge Lynn N. Hughes." Id. at 667. ("December 2002 Injunction").

The Baums appealed the sanctions and December 2002 Injunction to this Court. In March 2004, this Court upheld the sanctions order in an unpublished opinion, but it limited the scope of the December 2002 Injunction. Clark v. Mortenson, 93 F. App'x 643, 655 (5th Cir. 2004). This Court noted that the December 2002 Injunction made permanent a preliminary pre-filing injunction that forbade the Baums from making any claims against the Mortenson defendants and related parties. Id. at 654. Therefore, this Court determined that the December 2002 Injunction was intended to only apply to the Mortenson defendants and related parties, and not act as a bar to all future filings unrelated to the Mortenson case. Id. at 655. Thus, this Court limited the scope of the December 2002 Injunction by interpreting it narrowly. Id. ("March 2004 Injunction"). However, this Court did not rule out the possibility that a broader pre-filing injunction may be necessary in the future. This Court stated the following:

> We note that our statement in Farguson [v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir. 1986)], that "a broader injunction, prohibiting any filings in any federal court without leave of that court" may be "appropriate if a litigant is engaging in a widespread practice of harassment of different people," could potentially apply to the Baums. If the Baums persist in a widespread practice that is deserving of such a broad sanction, then such an injunction could be appropriate. But here, as of now, we interpret this injunction as more narrow and appropriate based on the Baums' actions in relation to [the Mortenson case].

Mortenson, 93 F. App'x at 655.

A little over a year later, in June 2005, the Baums entered an appearance in another bankruptcy case, In re: Zouhair (Danny) Hilal, Cause No. 05-36909

("the Hilal case"). Prior to bankruptcy, Danny Hilal owned and operated several limited liability companies, including Appellee, Blue Moon Ventures L.L.C. Blue Moon's primary business was purchasing real property at foreclosure sales and leasing those properties to residential tenants. Most of the assets of the Hilal estate consisted of interests in these limited liability companies. After Danny Hilal (individually) filed for bankruptcy, Randy W. Williams ("the Trustee"), the other Appellee, was appointed Chapter 11 trustee over the Hilal estate.

Sheldon Baum claimed to be a secured, judgment creditor in the Hilal case, but he would not identify his claim. Brian Baum was again misleading the parties and the court as to being a licensed attorney in Texas, and Douglas Baum participated in the scheme by posting a fake notice of federal tax lien on property related to the estate.

At the same time, Appellee Blue Moon was involved in litigation in Texas state court over its right to receive a deed to certain real property, referred to as the "Kelliwood property." The Baums took an assignment of a right of redemption for the Kelliwood property and, based on this alleged right, took up residence on the property. Blue Moon believed that the right of redemption was expired or invalid, so it filed a trespass to try title suit in state court to clarify ownership to this property. A second suit was simultaneously proceeding in state court in which the Baums used Linda Chepolis, the girlfriend of Brian Baum, to file suit against the taxing authority, the constable, and an individual claiming to own an interest in Blue Moon ("the Chepolis suit").

In the bankruptcy court, counsel for the Trustee filed a Motion to Show Cause to identify the creditors that the Baums represent and for explanation of the basis of the Baums' claims. In August 2005, after a hearing, the bankruptcy court, Judge Steen presiding, issued a Memorandum and Order Imposing Corrective Sanctions, which described the similarity between the Baums'

conduct in the Mortenson case and the Hilal case. The bankruptcy court concluded the following:

> Both in Judge Hughes' case and in this one, the Baums had no apparent connection to the parties or to the events until after the filing of legal proceedings. The Baums injected themselves into both cases by recruiting, or seeking to recruit, defrauded creditors. The Baums recruit by asserting that the efforts of the receiver (trustee) are insufficient. In Judge Hughes' case, the Baums promoted a suit against the state court receiver. In this case, the Baums seek to bypass the efforts of the bankruptcy trustee to promote a proposal that apparently is designed to benefit the Baums.

> Brian Baum's letter to creditors, Douglas Baum's notices posted on property related to the estate, and Sheldon Baum's Preliminary Outline of a chapter 11 plan of reorganization are a continuation of a pattern of conduct identified by Judge Hughes that are materially misleading to creditors and parties in interest in this case. The Court concludes that the following corrective sanctions are appropriate at this time, but reserves imposition of more severe sanctions if the pattern of conduct does not stop.

Judge Steen ordered that all three Baums were not to interfere further with the administration of the Hilal bankruptcy estate. Judge Steen also ordered that the clerk forward his Memorandum and Order to the district court "for consideration of matters related to Judge Hughes' case and for such further action as that court deems appropriate."

The district court, Judge Hughes presiding, then issued on its own motion, an Order to Show Cause, directing the Baums, including Douglas Baum, to appear and show why they should not be prohibited from, "directly or indirectly, entering the court house, filing papers of any nature, or representing to anyone that they are playing any part in a proceeding in or related to this court." The Baums were also ordered to appear to "show why they should not be held in contempt for violating the permanent injunction of December 23, 2002."

The court conducted two three-hour hearings in which the Baums all testified, as well as counsel for the Appellees (collectively referred to as "Blue

Moon"). The court concluded that the Baums had continued in their abusive litigation practices, and thus a modification of the March 2004 Injunction was necessary. On April 25, 2006, the district court specifically enjoined Douglas Baum from "directly or indirectly [filing] claims in courts or with agencies in the state of Texas without the express written permission of Judge Lynn N. Hughes." ("April 2006 Injunction"). Thus, the district court modified the March 2004 Injunction so that it was identical in scope to its original December 2002 Injunction. The district court qualified the modification with the following statement: "Because he has been consistently less-culpable and swore that he intends to separate himself from his brother and father, after January 2007, the court will revisit the portions of this injunction that apply to Douglas Baum." The district court's Order also stated that Douglas Baum had agreed to vacate the Kelliwood property and dismiss the Chepolis suit in state court in exchange for Blue Moon dismissing their state court claims against him.

Douglas refused to agree to any modification of the March 2004 Injunction on the grounds that it would impede his business. Three days after the district court modified the March 2004 Injunction, Blue Moon and the Trustee filed a motion to be added as real parties in interest. The district court granted this motion and entered an order designating the Appellees real parties in interest nunc pro tunc. Douglas Baum filed a timely notice of appeal.

To summarize, the "December 2002 Injunction" was issued by the district court and references the pre-filing injunction that barred Douglas Baum from filing any claims with any federal or state court or agency in Texas without the express written permission of Judge Hughes. The "March 2004 Injunction" was issued by this Court and limited the scope of the pre-filing injunction to the Mortenson defendants and related parties. The "April 2006 Injunction" was issued by the district court and expanded the scope of the pre-filing injunction

to its original dimensions. These three labels refer to the same pre-filing injunction at different points in time.

## II. Analysis

A. The district court had jurisdiction to sua sponte modify the pre-filing injunction in order to prevent Douglas Baum from engaging in vexatious, abusive, and harassing litigation.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1). Questions of subject matter jurisdiction are reviewed de novo on appeal. Bissonnet Invs. L.L.C. v. Quinlan (In re Bissonnet Invs. L.L.C.), 320 F.3d 520, 522 (5th Cir. 2003). Douglas Baum argues that the district court lacked jurisdiction to sua sponte modify the pre-filing injunction. We disagree.

A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation. Farguson v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir. 1986) (recognizing the district court's inherent power to protect its jurisdiction and judgments and to control its own dockets); Day v. Allstate Ins. Co., 788 F.2d 1110, 1115 (5th Cir. 1986) (holding that a district court may impose a pre-filing injunction, which would bar a litigant from filing any additional actions without first obtaining leave from the district court, to deter vexatious filings) (citing Martin-Trigona v. Lavien (In re Martin-Trigona), 737 F.2d 1254, 1261-62 (2d Cir. 1984)). A pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." Farguson, 808 F.2d at 360. This Court will review the district court's decision to grant or modify an injunction under the abuse of discretion standard. Newby v. Enron Corp., 302 F.3d 295, 301 (5th Cir. 2002) (grant of injunction); ICEE Distribs., Inc. v. J&J Snack Foods Corp., 445 F.3d 841, 850 (5th Cir. 2006) (modification of injunction). A district court clearly has the power to impose a pre-filing injunction in the appropriate factual circumstances. Farguson, 808 F.2d at 360; see also Collum v. Edwards, 578 F.2d 110, 112 (5th

Cir. 1978) ("The Judge's broad and flexible equitable powers govern the granting and dissolution of permanent as well as temporary injunctions.").

Baum does not dispute that the district court had jurisdiction to issue the December 2002 Injunction. Baum only argues that the district court could not sua sponte modify the March 2004 Injunction when no party from either the Mortenson case or the Hilal case filed a motion to modify that injunction.[1]

Baum argues that the district court's sua sponte modification of the March 2004 Injunction violated the principles of res judicata, law of the case, and double jeopardy. Baum cites to United States v. Swift & Co., 286 U.S. 106 (1932), for the proposition that a court is not allowed to reverse itself under the "guise" of modification. Id. at 119. Swift stands for the proposition that "the availability of modification is not a substitute for a direct appeal from a judgment" and "modification is not a means by which a losing litigant can attack the court's decree collaterally." 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2961 (2d ed. 1995); see Swift, 286 U.S. at 119 ("The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making."). In Swift, Justice Cardozo held that changed factual circumstances did not warrant modification to alleviate or eliminate restrictions contained in the original consent decree. Id. at 119. The crux of Baum's argument is that the district court had no jurisdiction to "sua sponte attempt to reverse the ruling of the [Fifth] Circuit," i.e. the March 2004 Injunction. In support of this argument, Baum observes that the district court's modification of the March 2004 Injunction resulted in a pre-

---

[1] Neither the Trustee's Motion to Show Cause, which was filed with the bankruptcy court, nor Judge Steen's Memorandum and Order, which referred the matter to Judge Hughes, recommended that the March 2004 Injunction should be modified. Judge Steen referred the matter to Judge Hughes, who sua sponte issued his Order to Show Cause regarding whether the March 2004 Injunction should be modified.

filing injunction that was identical in scope to its original December 2002 Injunction.

This Court previously stated that the scope of the pre-filing injunction could be broadened in the future based on changed factual circumstances. ICEE Distribs., 445 F.3d at 850. If the district court had reinstated the original December 2002 Injunction after the Mortenson appeal without a change in the factual circumstances, then Baum's argument might have some merit, but the facts clearly indicate that Baum continued to engage in abusive litigation practices after the December 2002 Injunction was narrowly construed by this Court in 2004. Baum's reliance on Swift is misplaced because the district court did not attempt to "reverse" or "modify" the March 2004 Injunction in the absence of changed factual circumstances. Swift does not indicate whether the district court may sua sponte modify the permanent pre-filing injunction or whether changed factual circumstances support a modification that imposed additional restrictions on Douglas Baum.

Furthermore, in Swift, the Supreme Court acknowledged that the lower court had jurisdiction to review and modify the consent decree in question. See Swift, 286 U.S. at 114 ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent . . . . A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."). Swift supports the proposition that the district court had jurisdiction to modify the injunction based on changed factual circumstances. Although the December 2002 Injunction did not expressly reserve a power to modify, Swift held that "if the reservation had been omitted, power [to modify] . . . still [exists] by force of principles inherent in the jurisdiction of the chancery." Id. at 114.

Blue Moon argues that the district court retained jurisdiction over the pre-filing injunction insofar as necessary to effectuate the purpose of that injunction.

9

In support of this argument, Blue Moon cites to Exxon Corp. v. Texas Motor Exchange of Houston, Inc., which recognized that "an injunction may be modified to impose more stringent requirements on a defendant when the original purposes of the injunction are not being fulfilled in any material respect." 628 F.2d at 503 (internal quotations omitted). Blue Moon argues that the purpose of the pre-filing injunction was to prevent waste of judicial resources, and because the Baums continued their vexatious filings after the Mortenson appeal was decided, the district court's modification of the March 2004 Injunction was proper. In Exxon Corp., this Court did not address whether modification can be sought on the district court's own motion when no other party has sought redress.

Blue Moon observes that other circuits have expressly allowed district courts to sua sponte impose pre-filing injunctions if the party enjoined is given notice and a hearing. In re Oliver, 682 F.2d 443, 446 (3rd Cir. 1982) (notice and hearing required before the district court imposes a pre-filing injunction against prisoner litigant); Martin-Trigona, 737 F.2d at 1261-62. In Martin-Trigona, the Second Circuit has held that "[w]here the jurisdiction of the federal courts is in need of protection, we need not await the arrival of a litigant able to show private relief . . . . A history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel is enough." 737 F.2d at 1262 (internal quotations omitted). We have previously cited Martin-Trigona in support of the proposition that the district court has authority to impose a pre-filing injunction. Day, 788 F.2d at 1115. We agree with the Second Circuit's conclusion that a district court may sua sponte impose a pre-filing injunction to deter vexatious filings, and we agree with its rationale for this conclusion:

> Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs

their ability to carry out Article III functions. If such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private party to injunctive relief, the independence and constitutional role of Article III courts would be endangered.

Martin-Trigona, 737 F.2d at 1261. Because the district court has jurisdiction to sua sponte impose a pre-filing injunction to deter vexatious filings, it also has jurisdiction to sua sponte modify an existing permanent injunction to accomplish the same goal.

In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors:

(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004). We agree that "the traditional standards for injunctive relief, i.e. irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." Martin-Trigona, 737 F.2d at 1262.

Notice and a hearing are required if the district court sua sponte imposes a pre-filing injunction or sua sponte modifies an existing injunction to deter vexatious filings. In Western Water Management, Inc. v. Brown, the defendants complained of the district court's sua sponte modification of a permanent injunction, which imposed additional restrictions on the defendants. 40 F.3d 105, 109 (5th Cir. 1994). Without addressing whether the district court had the authority to sua sponte modify the injunction, we vacated the injunction as an abuse of discretion because the modification "was not preceded by appropriate

11

notice and an opportunity for hearing." Id. Brown implies that the district court may sua sponte modify a permanent injunction if the parties are given prior notice and an opportunity for hearing.

We agree with the Second Circuit's holding in Martin-Trigona that a district court has jurisdiction to sua sponte impose a pre-filing injunction, and we believe that the rationale of that decision is equally applicable to a modification. Although Martin-Trigona and Brown imply that a district court may sua sponte modify an existing injunction to deter vexatious filings, they do not explicitly adopt this holding. Based on our precedent, we conclude that the exercise of this power is permitted by Rule 60(b)(5) of the Federal Rules of Civil Procedure.

Rule 60(b)(5) states the following: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment [or] order [when] . . . it is no longer equitable that the judgment should have prospective application." See Agostini v. Felton, 521 U.S. 203, 215 (1997) (holding that a party may obtain relief from a district court's permanent injunction pursuant to Rule 60(b)(5)). The one-year limitation period applicable to some of the grounds of relief in Rule 60(b) "is not applicable to the federal courts' power to modify . . . a continuing decree of injunction." Ridley v. Phillips Petroleum Co., 427 F.2d 19, 23 (10th Cir. 1970); FED. R. CIV. P. 60(b). A Rule 60(b)(5) motion is the appropriate vehicle for modifying a permanent injunction that has prospective effect, regardless of whether the modification expands restrictions or eliminates restrictions in the injunction. Cook v. Birmingham News, 618 F.2d 1149, 1151-52 (5th Cir. 1980); see Brown, 40 F.3d at 109 ("[A] district court retains jurisdiction to modify an injunction to the defendants' detriment under certain circumstances . . . ."). We have previously held that the motion requirement of Rule 60(b) can be satisfied on the district court's own motion. McDowell v. Celebrezze, 310 F.2d 43, 44 (5th Cir. 1962); see Dr. José S. Belaval, Inc. v. Peréz-

Perdomo, 465 F.3d 33, 37 (1st Cir. 2006) (noting circuit split on whether Rule 60(b) bars a district court from sua sponte issuing relief from judgment). Rule 60(b)(5) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a [party-initiated] motion." United States v. Jacobs, 298 F.2d 469, 472 (4th Cir. 1961).

In this unusual case, the district court concluded that the interest of justice required the modification of the March 2004 Injunction to deter vexatious filings. We hold that if the modification is preceded by appropriate notice and an opportunity for hearing, the district court may sua sponte modify an injunction pursuant to Rule 60(b)(5) in order to deter vexatious filings.[2] Because the issue is not before us, we express no opinion on whether the district court may sua sponte modify a permanent injunction that does not involve vexatious filings.

B.    The district court did not abuse its discretion in modifying the pre-filing injunction.

A district court's modification of an injunction is reviewed for an abuse of discretion. ICEE Distribs., 445 F.3d at 850. "Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed." Id.

Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents. See Farguson, 808 F.2d at 359-60. However, an "injunction against future filings

---

[2] A district court, however, may not grant a Rule 60(b) motion if it has been divested of jurisdiction by the filing of a notice of appeal. Shepherd v. Int'l Paper Co., 372 F.3d 326, 329 (5th Cir. 2004). While the validity of an injunction is on appeal, the district court's power is limited to "maintaining the status quo" pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 820 (5th Cir. 1989). In this case, the Mortenson appeal was no longer pending when the district court sua sponte modified the pre-filing injunction to impose additional restrictions.

must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." Id. at 360. Based on this principle, this Court previously limited the December 2002 Injunction to only enjoin Baum from filing any additional claims against the Mortenson defendants and related parties. However, this Court cautioned Baum that "[i]f the Baums persist in a widespread practice that is deserving of such a broad injunction, then [a broader] injunction could be appropriate." Mortenson, 93 F. App'x at 655.

Both Judge Hughes and Judge Steen determined that Baum continued in his abusive litigation practices in both federal and state court. Specifically, Judge Steen found that Douglas Baum "posted notices that are deceptive in that they suggest that a notice of [federal] tax lien has been posted by the IRS related to property that is, or may be, claimed by the [Hilal bankruptcy] estate." At the hearing, Douglas Baum did not deny that he posted this fake notice of federal tax lien, and counsel for the IRS informed the bankruptcy court that the IRS had not authorized the posting. Judge Steen ordered the Baums not to interfere with the administration of the Hilal bankruptcy estate, "including without limitations the publication of misleading information regarding tax liens and/or lis pendens and the publication of false or misleading documents concerning the estate." Furthermore, Judge Hughes found that Douglas Baum had conspired with his father and brother to wrongfully interfere in the Hilal bankruptcy.

The district court could consider Baum's conduct in the state court proceedings in determining whether his conduct before the bankruptcy court was undertaken in bad faith or for an improper motive. See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1417-18 (5th Cir. 1994) (regarding sanctions under 28 U.S.C. § 1927). Limiting the injunction to any particular defendants did not stop Baum from repeating his pattern of abusive litigation practices; therefore, the district court did not abuse its discretion in determining that a broader injunction is necessary to protect both the court and future

14

parties. See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3d 546, 579 (5th Cir. 1996) ("Generally, a court should only modify an injunction to achieve the original purposes of the injunction, if those purposes have not been fully achieved."). The remaining issue, however, is whether the modified injunction is too broad and not tailored so as to "protect the legitimate rights of litigants." Baum makes three arguments regarding whether the injunction is too broad and violates his constitutional and due process rights.

1.  The district court abused its discretion in extending the pre-filing injunction to filings in state courts, state agencies, and this Court.

Baum argues that the district court abused its discretion in extending the injunction to prohibit Baum from filing any claims in state courts or with state agencies. Baum argues that even if the injunction is proper for federal courts, "[a]buse of state judicial process is not per se a threat to the jurisdiction of Article III courts and does not per se implicate other federal interests." Martin-Trigona, 737 F.2d at 1263. In Martin-Trigona, the Second Circuit concluded that the district court "erred in its blanket extension of the [pre-filing] injunction to state courts," but it upheld those provisions of the injunction requiring Martin-Trigona to alert state courts of his history of vexatious filings in the federal courts. Id.

Blue Moon does not cite to any authority that upholds a federal court's pre-filing injunction against state court and state agency filings. Furthermore, in Baum's prior appeal, this Court noted that "a broader injunction, prohibiting any filings in any federal court without leave of that court may be appropriate." Mortenson, 93 F. App'x at 655 (emphasis added).

Recently, the Tenth Circuit held that (1) a district court's pre-filing injunction may extend to filings in lower federal courts within the circuit that the issuing court is located, (2) a district court's pre-filing injunction may not

15

extend to filings in any federal appellate court, and (3) a district court's pre-filing injunction may not extend to filings in any state court. Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340, 1344 (10th Cir. 2006). Based on the facts of this case, we find that the district court abused its discretion in extending the pre-filing injunction to filings in state courts, state agencies, and this Court.[3] In the words of Sieverding, "those courts [or agencies] are capable of taking appropriate action on their own." Id. We uphold those provisions of the pre-filing injunction that prevent Douglas Baum from filing claims in federal bankruptcy courts, federal district courts, and federal agencies in the state of Texas without the express written permission of Judge Hughes.

2.      The pre-filing injunction did not improperly stay state court proceedings.

Baum argues that the modified injunction improperly stayed state court proceedings, in violation of the Anti-Injunction Act, 28 U.S.C. § 2283, and in violation of the principals set forth in Younger v. Harris, 401 U.S. 37 (1971). Baum appears to argue that the district court's pre-filing injunction stayed the two pending state court proceedings. However, the Order clearly states that Baum voluntarily agreed to dismiss his state court claims; the district court did not order him to dismiss these cases. Because the district court's Order did not actually stay any state court proceedings, neither the Younger abstention doctrine or the Anti-Injunction Act are implicated. Furthermore, we have already held that the pre-filing injunction in this case may not extend to state court proceedings.

---

[3] We express no opinion on whether a district court's pre-filing injunction may extend to state court or state agency filings in other factual circumstances.

3.  The pre-filing injunction did not constitute a criminal contempt.

Finally, Baum argues that his due process rights were violated because he was denied the rights guaranteed a defendant in a criminal contempt action. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826-27 (1994). Blue Moon asserts that while the Order to Show Cause contemplated the possibility of a criminal contempt hearing, the two hearings never developed into such.

Baum concedes there are no findings that the proceedings were criminal contempt proceedings, but he urges this Court to look to the substance of the order to determine whether it is criminal or civil in nature. S. Ry. Co. v. Lanham, 403 F.2d 119, 124 (5th Cir. 1968). Baum fails to acknowledge that the district court's Order specifically states that Judge Hughes will reconsider the sanctions imposed on Baum if he can show that he has separated himself from his father and brother. Baum also fails to acknowledge that he can seek to modify or dissolve the pre-filing injunction at a later date pursuant to Rule 60(b)(5). Blue Moon argues that the hearing transcripts clearly show that the district court focused only on whether the Baums' conduct required a modification of the March 2004 Injunction, not on whether the Baums had violated that injunction.

The Court finds that the district court's sua sponte modification of the injunction to deter vexatious filings did not constitute criminal contempt. First, a pre-filing injunction "does not impose punishment; rather, it acts prospectively to curtail [Baum's] future access to the courts." Shuffman v. Hartford Textile Corp. (In re Hartford Textile Corp.), 613 F.2d 388, 391 (2d Cir. 1979). "The right of access to the courts is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." Sieverding, 469 F.3d at 1343 (citing Tripati v. Beaman, 878 F.2d

351, 353 (10th Cir.1989)). Second, we have been unable to locate any authority, and Baum has cited to none, holding that a pre-filing injunction constitutes criminal contempt. On the contrary, Martin-Trigona held that a pre-filing injunction does not constitute criminal contempt. 737 F.2d at 1260. Third, a pre-filing injunction is not a recognized penalty for criminal contempt. See 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . ."); see United States v. Ortlieb, 274 F.3d 871, 879 (5th Cir. 2001) (holding that suspension from the practice of law was not a recognized penalty for criminal contempt under § 401). Fourth, unless Congress has expressly provided to the contrary, an injunction is an equitable remedy that does not invoke a constitutional right to a jury trial. United States v. State of La., 339 U.S. 699, 706 (1950); Rodriguez v. Munoz, 808 F.2d 138, 142-43 (1st Cir. 1986). Fifth, we disagree with Baum's argument that he has no opportunity to purge himself of the restrictions imposed by the pre-filing injunction. In the future, Baum may file a Rule 60(b)(5) motion to modify or dissolve the pre-filing injunction if changed factual circumstances warrant that action, and the district court's ruling on that motion will be appealable. 28 U.S.C. § 1292(a)(1). This pre-filing injunction is not a punishment; it is merely a tool to ensure that Baum does not continue to engage in abusive litigation practices. If Baum violates the pre-filing injunction, as modified by this opinion, then he would be subject to a criminal contempt prosecution.

In this case, the Order to Show Cause gave notice (1) that Douglas Baum might be held in criminal contempt and (2) that the district court might impose a broad pre-filing injunction. See Cromer, 390 F.3d at 819-20 (holding that notice of a possible finding of contempt rarely provides adequate notice of a pre-filing injunction). Baum was given notice and an opportunity to be heard

regarding the imposition of the pre-filing injunction, which satisfies the requirements of due process in this case.

C.      The district court did not abuse its discretion by designating the Appellees real parties in interest nunc pro tunc.

Baum argues that the district court erred by designating the Appellees real parties in interest nunc pro tunc. The court's decision to enter a nunc pro tunc order is reviewed for abuse of discretion. Wells Fargo Bank of Texas, N.A. v. Sommers (In re Amco Ins.), 444 F.3d 690, 695 (5th Cir. 2006). Rule 60(a) of the Federal Rule of Civil Procedure allows the court to make corrections for clerical mistakes and errors arising from oversight or omission.

Baum argues that the nunc pro tunc order was improper because it "was simply an attempt to supply a required procedure that was never taken . . . [because] no real-party-in-interest ever began this action, and all action was wrongly taken sua sponte by the district court." Based on our finding that the district court had jurisdiction to sua sponte modify the permanent injunction to deter vexatious filings, we find that the district court did not abuse its discretion by designating the Appellees real parties in interest nunc pro tunc. We note that the Appellees were present and participated in both hearings before Judge Hughes. If a district court has the authority to sua sponte modify an injunction to deter abusive litigation practices, we see no reason why a party harmed by those practices should not be able to represent its own interests and the interests of the court and public on appeal.

## III. Conclusion

After the district court discovered that the March 2004 Injunction did not deter Baum from engaging in abusive litigation practices, the district court had the authority to order Baum to appear and show cause why the injunction should not be modified. The district court had jurisdiction to sua sponte modify the injunction to deter Baum's abusive litigation practices. The modification was

19

based on the factual findings of Judges Steen and Hughes, and Baum was given notice and an opportunity to be heard before the modified injunction was issued. The decision to broaden the injunction was not an abuse of discretion; however, it was an abuse of discretion for the district court to extend the injunction to filings in state courts, state agencies, and this Court. The pre-filing injunction is amended as follows: Douglas Baum is enjoined from directly or indirectly filing claims in federal bankruptcy courts, federal district courts, and federal agencies in the state of Texas without the express written permission of Judge Lynn N. Hughes.

AFFIRMED AS MODIFIED.